**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

**FRANCU ONE LLC**, a Maryland limited liability company,

and

**GLOBAL ANESTHESIA SERVICES LLC**, a Maryland limited liability company,

*Plaintiffs*,

v.

**NATIONAL MEDICAL BILLING SERVICES, LLC, d/b/a NIMBLE SOLUTIONS**, as successor-in-interest to MEDI-CORP, INC.,

*Defendant*.

**JURY TRIAL DEMANDED**

**Case No. ____________**

**VERIFIED COMPLAINT**

Plaintiffs Francu One LLC ("Francu One") and Global Anesthesia Services LLC ("Global"), by and through undersigned counsel, for their Verified Complaint against Defendant National Medical Billing Services, LLC d/b/a Nimble Solutions ("Nimble" or "Defendant"), allege as follows:

**NATURE OF THE ACTION**

1. This action arises from Defendant's failure, after acquiring Medi-Corp, Inc. ("Medi-Corp") and taking over a long-running anesthesia revenue-cycle relationship with Plaintiffs, to perform the billing, payor-interface, provider-enrollment, credentialing-administration, reporting, and record-access functions that Defendant undertook as Plaintiffs' agent and billing partner.

2. For years, Medi-Corp and then Defendant handled provider credentialing and payor-facing administrative work as part of Plaintiffs' anesthesia billing operations, maintained insurer portal access and credentials, received insurer notices, communicated with payors, managed provider paperwork, and operated as the practical extension of Plaintiffs' practices for revenue-cycle and insurer-facing tasks.

3. After internal staffing changes, Defendant dropped pending credentialing work, mishandled Medicare surrogate and other payor enrollments, failed to complete credentialing for multiple providers, failed to give providers meaningful guidance for Medicaid ePrep and similar enrollment processes, allowed claims to age and miss timely-filing deadlines, issued inaccurate or false status updates, and then failed to provide complete reporting and record access needed for Plaintiffs to mitigate the damage.

4. As a direct and foreseeable result, Plaintiffs suffered extensive denied, aged, and at-risk claims, deterioration in collection performance, loss of business opportunities, and ongoing harm well in excess of $75,000 and presently believed to exceed $750,000.

## PARTIES

5. Plaintiff Francu One LLC ("Francu One") is, and at all relevant times was, a Maryland limited liability company with its principal place of business in Maryland. Upon information and belief, its sole member is Dr. Tudor Francu, a natural person and citizen of Maryland.

6. Plaintiff Global Anesthesia Services LLC ("Global") is, and at all relevant times was, a Maryland limited liability company with its principal place of business in Maryland. Upon information and belief, its sole member is Dr. Tudor Francu, a natural person and citizen of Maryland.

7. Defendant National Medical Billing Services, LLC d/b/a nimble solutions ("Nimble" or "Defendant") is, and at all relevant times was, a limited liability company doing business throughout the United States, with its headquarters and principal place of business at or near 7 Arnage Drive, Chesterfield, Missouri 63005. Upon information and belief, none of Defendant's members is a citizen of Maryland.

8. Defendant acquired Medi-Corp in or about 2022 and thereafter continued and assumed Medi-Corp's ongoing relationship with Plaintiffs, including the performance of billing, collection, credentialing-related, reporting, and insurer-facing administrative services.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

10. Complete diversity exists because Plaintiffs are citizens of Maryland and, upon information and belief, Defendant is a citizen of states other than Maryland.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District for venue purposes, maintains its headquarters and principal operational office here, and a substantial part of the acts, omissions, operational decisions, reporting failures, and payor-facing activities giving rise to Plaintiffs' claims occurred in or emanated from this District.

12. Defendant is subject to personal jurisdiction in Missouri because it is headquartered here, conducts substantial business here, and the challenged conduct was directed, managed, and controlled from this District.

13. The Billing Services Agreement governing the parties' relationship contains a New Jersey choice-of-law provision. Plaintiffs therefore plead their contract and related state-law claims under New Jersey substantive law except to the extent federal procedural law controls.

14. All conditions precedent to suit have occurred, been performed, been waived, been excused, or were prevented by Defendant. Plaintiffs repeatedly gave notice of Defendant's breaches and demanded cure, records, and meaningful remediation, but Defendant failed and refused to cure the defaults or make Plaintiffs whole. To the extent Defendant contends any contractual mediation provision remains unsatisfied, Plaintiffs allege that Defendant's conduct waived, frustrated, prevented, or excused further pre-suit performance, and Plaintiffs remain willing to participate in any mediation the Court may order.

## FACTUAL ALLEGATIONS

### A. The 2008 Billing Services Agreement and the Agency Relationship

15. On or about December 1, 2008, Medi-Corp and Francu One entered into a written Billing Services Agreement (the "BSA"); a true and correct copy of which is attached hereto as Exhibit A.

16. Under Section 2 of the BSA, Medi-Corp agreed to serve as Francu One's agent in accordance with the BSA's terms and conditions to bill and collect for anesthesia services. (Ex. A § 2).

17. Section 3.1 required Medi-Corp, with respect to anesthesia services, to code all services, generate initial bills, and claim or statement-of-account to the appropriate payor on behalf of the client after receiving specified information. (Ex. A § 3.1).

18. Sections 3.2 and 3.3 required Medi-Corp to provide all equipment, hardware, software, materials, supplies, and personnel needed for billing and collection, and to maintain

personnel responsible on a regular basis for completed patient information, anesthesia service information, charge schedule data, and the diligent acquisition of other information necessary to permit effective billing. (Ex. A §§ 3.2–3.3).

19. Section 3.4 required Medi-Corp to discharge its billing functions in good faith and with reasonable care at all times in the name of the client. (Ex. A § 3.4).

20. Section 3.9 required reporting in writing to the client with respect to the prior month's operations, billing and collection activity, completed billings, gross collections, client lock-box deposits, contractual adjustments, accounts recorded as uncollectible or administrative write-off, and outstanding receivables. (Ex. A § 3.9).

21. Section 3.11 required Medi-Corp to provide regular training and compliance seminars and to staff the account with experienced employees knowledgeable in the methods and procedures required to effect proper billing and collection. (Ex. A § 3.11).

22. Section 7 required Medi-Corp, upon request and within four years after expiration of the Agreement, to make available to the client its books and records necessary to verify the nature and extent of costs incurred by the client for services. (Ex. A § 7).

23. Section 8 recognized that patient information, data, statistics, records, reports, correspondence, contracts, and related information furnished by the client or generated by Medi-Corp in the performance of its responsibilities under the BSA remained the property of the client and could be retained and used only as necessary to accomplish the purposes set forth in the BSA. (Ex. A § 8).

24. Section 17 provided that the Agreement would be binding upon and inure to the benefit of the parties and their respective successors and assigns. (Ex. A § 17).

25. Effective billing and collection for anesthesia practices depends not merely on transmitting claim forms, but on ensuring that the rendering provider is properly linked, enrolled, and/or credentialed with the relevant payor so that submitted claims can be paid instead of rejected, pended indefinitely, or denied for enrollment, credentialing, or timely-filing reasons.

26. Consistent with the BSA's agency provisions and the parties' course of performance, Medi-Corp handled provider credentialing, insurer-facing administrative tasks, portal access, payor notices, and related enrollment work for Plaintiffs as part of the integrated billing relationship.

27. For years, Medi-Corp personnel, including Ginger Sturdivant and Jackie Logue, were regularly in contact with Dr. Francu regarding providers who needed to be credentialed, maintained payor-portal logins and passwords, received insurer notifications, and acted as operational administrators for insurance communications and credentialing paperwork.

28. Plaintiffs relied on Medi-Corp and then Defendant to act as their insurer-facing billing and credentialing surrogate so claims could be submitted, processed, and paid.

**B. Defendant Acquired Medi-Corp and Assumed the Relationship**

29. In or about 2022, Defendant acquired Medi-Corp and thereafter stepped into Medi-Corp's role with respect to Plaintiffs.

30. After that acquisition, Defendant continued servicing Plaintiffs' accounts, continued handling billing and payor-facing activity, continued managing credentialing-related functions, continued billing fees, and continued operating under the same integrated commercial relationship created under the BSA and the parties' longstanding course of performance.

31. Defendant never provided Plaintiffs with any fully executed superseding agreement that displaced the BSA or disclaimed the functions Defendant in fact continued to perform.

32. Plaintiffs therefore continued to operate on the understanding, induced and reinforced by Defendant's conduct, that Defendant had assumed Medi-Corp's obligations and would continue handling the same revenue-cycle, credentialing-related, reporting, and insurer-facing work that had long been part of the relationship.

33. Defendant also accepted and serviced Global as an affiliated anesthesia entity within the same integrated relationship, billed for work relating to Global, handled or undertook payor-facing and credentialing-related tasks for Global, and treated Global as part of the Francu client relationship.

**C. <u>Defendant's Credentialing, Billing, Reporting, and Record-Access Failures</u>**

34. For many years, the relationship functioned with comparatively stable credentialing and payor-enrollment support.

35. That changed materially after internal personnel changes at Defendant, including the departure of key credentialing personnel in or around 2024 and 2025.

36. Following the aforementioned personnel changes and during the relevant time period, Plaintiffs regularly communicated with Defendant personnel regarding credentialing, billing, reporting, and accounts-receivable issues, including Aryn D. Murray, Program Manager, who oversaw Defendant's credentialing operations; Caryn Mattia, Plaintiffs' account manager and Senior Director of Client Services; Brenda Blake, Defendant's Accounts Receivable Manager; and supervisory personnel including Azure Hardy, Defendant's Chief Client Officer.

36. Upon information and belief, after those personnel changes Defendant lacked adequate trained credentialing support for Plaintiffs' anesthesia accounts and did not timely replace the lost competency or restore orderly processing.

37. By no later than May 2024, Defendant's credentialing processes for Plaintiffs' providers had begun to fail, and most new or pending provider credentialing work stopped moving in the ordinary course.

38. Plaintiffs had provided Defendant with the information needed to credential providers and had repeatedly identified the providers who needed to be enrolled and/or credentialed.

39. Plaintiffs also transmitted provider files to Defendant personnel responsible for credentialing, including Ginger Sturdivant, and those files were later handed off internally when staffing changed.

40. Defendant had internal knowledge of the status of pending credentialing files, including through the handoff of files from Ginger Sturdivant to successor personnel, including Tami Conkleton, in or around March 2025.

41. Even after those handoffs, Defendant failed to timely follow up, failed to keep the processes moving, and allowed the credentialing work to stall.

42. Among other things, Defendant failed to timely submit credentialing and enrollment applications for providers even when it had the necessary information.

43. Defendant also failed to correctly submit or complete provider-linkage and Medicare surrogate or NPPES-related processes, causing avoidable delays and repeated back-and-forth communications over matters that should have been handled promptly and correctly.

44. Defendant failed to complete credentialing for all providers, leaving some partially processed, some omitted, and some falsely represented as approved when they were not actually approved.

45. Defendant failed to properly manage Medicaid ePrep and similar payor-enrollment requirements, instead sending providers repeated or confusing requests without meaningful guidance about what was required, causing confusion, duplication, delay, and abandonment of the process by frustrated providers.

46. Defendant failed to submit some claims within applicable timely-filing windows, causing outright denials and permanent or near-permanent payment loss.

47. Defendant provided monthly updates and credentialing status reports that were inaccurate, misleading, incomplete, or false, including by listing provider numbers that were not valid and by marking providers as approved when payor systems did not reflect approval.

48. Defendant failed to supply Plaintiffs with the full reports and data needed to quantify the mounting losses, even after repeated requests for aging, accounts-receivable, credentialing, and loss information.

49. Defendant also failed to populate or maintain client-access fields within its Imagine system in a way that allowed Plaintiffs and their staff to run meaningful reports or extract the information necessary to evaluate denials, exposure, aging, and pending credentialing status.

50. As a result, Defendant both caused the loss and impaired Plaintiffs' ability to measure it, mitigate it, and pursue payor corrections before expiration of applicable deadlines.

51. Defendant's failures were not isolated clerical mistakes. They reflected systemic breakdowns in staffing, follow-up, reporting, and management of the payor-facing and credentialing-related work Defendant had undertaken as part of the parties' revenue-cycle relationship.

**D. Defendant Had Repeated Notice of the Problems and Failed to Cure**

52. Plaintiffs repeatedly raised these problems directly with Defendant over an extended period through emails, provider communications, meetings, and written notice.

53. Defendant had actual knowledge that providers were not being timely or properly enrolled and/or credentialed, that claims were being denied or aging because of those failures, that reports were incomplete, and that Plaintiffs were demanding correction and full visibility into the scope of the damage.

54. Plaintiffs also demanded access to all billing records, credentialing submissions, enrollment documentation, payor communications, internal correspondence, and related electronically stored information needed to understand and mitigate their losses.

55. Despite that notice, Defendant did not restore competent credentialing performance, did not timely produce a full accounting, and did not provide the complete operational transparency to which Plaintiffs were entitled.

56. Instead, Defendant continued to control the underlying data and records while disputing responsibility for the very failures those records would show.

**E. Plaintiffs' Damages**

57. Defendant's conduct caused substantial denied, delayed, aged, and at-risk claims across Plaintiffs' anesthesia operations.

58. Based on Plaintiffs' internal review and the information available to date, the gross claim exposure attributable to Defendant's failures exceeds $750,000 and continues to increase.

59. Defendant's own accounts-receivable reporting showed approximately $1.6 million in claims more than ninety days old, much of which was associated with the credentialing, enrollment, denial-management, and claim-submission failures described herein.

60. At Towson ASC alone, out of approximately 138 claims from September through November 2025, 98 remained unpaid as of March 2026, and approximately 40 were attributable to credentialing-related issues. Subsequent claims continued to accrue as unpaid, and Plaintiffs' damages continue to increase.

61. Defendant's failures also damaged Plaintiffs' reputation and business standing with ambulatory surgery centers and related facilities that evaluated Plaintiffs based in part on realized collection performance.

62. Plaintiffs lost business, contracts, or business opportunities, including at or relating to facilities such as Sterling ASC and Towson ASC, and Plaintiffs were disadvantaged in other opportunities because Defendant's poor credentialing and collection performance made Plaintiffs' revenue results appear materially weaker than they would have been had Defendant performed competently.

63. The full extent of Plaintiffs' damages cannot yet be calculated with precision because Defendant still controls, withholds, or has failed to produce complete books, reports, payor communications, credentialing files, and system data necessary for a complete accounting.

64. Plaintiffs therefore seek damages in an amount to be proven at trial, presently believed to exceed $750,000, together with equitable relief requiring a full accounting and production of client-owned records and data.

## COUNT I
## BREACH OF CONTRACT
*(Francu One LLC Against Defendant)*

65. Francu One repeats and realleges Paragraphs 1 through 64 as though fully set forth herein.

66. The BSA is a valid and enforceable contract.

67. Defendant, as successor and/or assignee to Medi-Corp and by its express and implied assumption through continued performance, billing, and control of the relationship, is bound by the BSA.

68. Francu One performed its obligations under the BSA or was excused from further performance by Defendant's prior material breaches.

69. Defendant materially breached the BSA, including Sections 2, 3.1, 3.2, 3.3, 3.4, 3.9, 3.11, 7, 8, and 17, by, among other things:

a. failing to act with good faith and reasonable care in performing the billing and collection functions it undertook;

b. failing to provide adequate trained personnel and operational follow-through necessary to effect proper billing and collection;

c. failing to diligently acquire and process the information necessary to permit effective billing;

d. failing to perform the provider-enrollment, credentialing-administration, payor-interface, and related insurer-facing tasks Defendant undertook as part of effective billing and collection;

e. failing to timely submit claims and thereby causing timely-filing denials;

f. issuing inaccurate or misleading status reports and monthly updates;

g. failing to provide the written reporting, books, records, data, and client-owned information required by the BSA; and

h. failing to preserve and make available the records necessary for Francu One to verify costs, trace denials, quantify exposure, and mitigate ongoing loss.

70. As a direct and proximate result of Defendant's breaches, Francu One has sustained substantial damages in an amount to be proven at trial.

**COUNT II**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
*(Francu One LLC Against Defendant)*

71. Francu One repeats and realleges Paragraphs 1 through 70 as though fully set forth herein.

72. The BSA contains an implied covenant of good faith and fair dealing.

73. Defendant exercised operational control and discretion over essential aspects of Francu One's billing, payor-interface, reporting, records, and credentialing-related processes.

74. Defendant breached the implied covenant of good faith and fair dealing by acting in bad faith and contrary to Francu One's justified expectations under the BSA, including by:

a. concealing or obscuring the true status of provider enrollment and credentialing problems;

b. providing inaccurate, incomplete, or misleading status reports and monthly updates;

c. withholding or failing to provide the records and data Francu One needed to quantify losses and mitigate further damage;

d. failing to staff and manage the account in a manner consistent with Francu One's reasonable expectations after Defendant assumed Medi-Corp's role; and

e. using its control over billing information, payor communications, and client data in a way that deprived Francu One of the fruits of the BSA.

75. Defendant's bad-faith conduct destroyed or materially injured Francu One's right to receive the benefits of the bargain, including effective billing, proper claim follow-up, accurate reporting, and access to client-owned information.

76. As a direct and proximate result, Francu One sustained damages in an amount to be proven at trial.

**COUNT III**

**BREACH OF FIDUCIARY DUTY AND DUTY TO ACCOUNT**

*(All Plaintiffs Against Defendant)*

77. Plaintiffs repeat and reallege Paragraphs 1 through 76 as though fully set forth herein.

78. Under the BSA and the parties' actual course of dealing, Defendant acted as Plaintiffs' agent with respect to billing, collection, payor communications, provider enrollment and credentialing administration, status reporting, and custody and management of Plaintiffs' records and data.

79. As Plaintiffs' agent, Defendant owed fiduciary duties of loyalty, candor, disclosure, due care, competent performance, proper accounting, and delivery of client-owned books, records, information, and property.

80. Defendant breached those fiduciary duties by, among other things:

a. failing to act with the care, competence, diligence, and candor required of an agent handling Plaintiffs' revenue-cycle and payor-facing operations;

b. mishandling provider enrollment and credentialing;

c. allowing claims to be denied or lost through delay, mismanagement, or timely-filing failures;

d. providing inaccurate or misleading status information;

e. failing to disclose the full scope of the operational failures and their financial consequences;

f. withholding, failing to return, or failing to make available Plaintiffs' books, records, reports, payor communications, credentialing files, and other client-owned data; and

g. failing to provide a full and accurate accounting despite repeated requests.

81. Because Defendant exercised control over Plaintiffs' insurer-facing operations and the records needed to understand and correct the harm, Plaintiffs reposed trust and confidence in Defendant beyond an ordinary arm's-length vendor relationship.

82. Defendant's breaches of fiduciary duty directly and proximately caused Plaintiffs to suffer financial losses, impaired mitigation opportunities, and uncertainty concerning the full amount of damages absent a compelled accounting.

**COUNT IV**

**BREACH OF IMPLIED-IN-FACT CONTRACT**

*(Global Anesthesia Services LLC Against Defendant, in the Alternative)*

83. Global repeats and realleges Paragraphs 1 through 82 as though fully set forth herein.

84. If the Court determines that Global was not an express party to the 2008 BSA, Global pleads this count in the alternative.

85. Through years of conduct, billing activity, credentialing-related work, payor-facing administration, reporting, fee charging, and mutual performance, Global and Defendant entered into an implied-in-fact contract under which Defendant agreed to provide billing, collection, reporting, and credentialing-related revenue-cycle services for Global in exchange for compensation.

86. Global performed by providing information, cooperation, and payment for Defendant's services.

87. Defendant breached that implied-in-fact contract by engaging in the same acts and omissions described above, including mishandling provider enrollment and credentialing, failing to timely and properly process claims, providing inaccurate reporting, and failing to produce the records and data necessary to quantify and mitigate the resulting losses.

88. As a direct and proximate result, Global sustained substantial damages in an amount to be proven at trial.

**COUNT V**

**ACCOUNTING AND INJUNCTIVE RELIEF**

*(All Plaintiffs Against Defendant)*

89. Plaintiffs repeat and reallege Paragraphs 1 through 88 as though fully set forth herein.

90. Defendant possesses, controls, or has superior access to the billing records, aging reports, credentialing submissions, enrollment files, payor communications, insurer portal data, internal notes, denial information, and other operational records necessary to determine the full amount and sources of Plaintiffs' losses.

91. The accounts between the parties are complex, involve large volumes of claim, payor, credentialing, and accounts-receivable data, and cannot be fully unraveled without an accounting.

92. Plaintiffs have no adequate remedy at law to obtain full visibility into the records and data Defendant controls or to calculate the complete scope of damages without a compelled accounting and turnover of client-owned information.

93. Under the BSA, the parties' agency relationship, and settled equitable principles, Defendant must provide a full and accurate accounting and must surrender or make available Plaintiffs' books, records, reports, credentialing documentation, payor communications, and related data.

94. Plaintiffs are also entitled to injunctive relief requiring Defendant to preserve all relevant electronically stored information and hard-copy files and to provide full, prompt, and usable access to Plaintiffs' billing, credentialing, enrollment, and payor-related records and systems.

**WHEREFORE**, Plaintiffs request that the Court enter equitable relief as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant and grant the following relief:

a. Award compensatory, consequential, and incidental damages in an amount to be determined at trial, presently believed to exceed $750,000;

b. Award pre-judgment and post-judgment interest as permitted by law;

c. Order Defendant to provide a full accounting of all billing, collection, denial, accounts-receivable, enrollment, credentialing, and payor-communication activity relating to Plaintiffs;

d. Order Defendant to produce and/or restore full access to all client-owned books, records, reports, credentialing submissions, enrollment files, insurer portal information, payor communications, and related electronically stored information relating to Plaintiffs;

e. Enter preliminary, permanent, and other injunctive relief requiring Defendant to preserve all relevant documents, communications, recordings, system data, and electronically stored information relating to Plaintiffs and the claims asserted herein;

f. Award Plaintiffs their taxable costs of suit; and

g. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: September 22, 2026

s/ *Ronald W. Chapman II*
RONALD W. CHAPMAN II, ESQ., LL.M.
CHAPMAN, DOWLING & MALLEK P.C.
456 E. Milwaukee Ave.
Detroit, Michigan 48202
T: (313) 758-6998
MI Bar No. P73179
ron@chapmanandassociates.com

*Counsel for Plaintiffs*

## VERIFICATION

Tudor Francu, M.D. hereby declares that he is the owner and manager of Plaintiffs and is authorized to make this statement on its behalf: I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 22, 2026

*/s/Tudor Francu, M.D.*
Tudor Francu, M.D.

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of September 2026, a true and correct copy of the foregoing Complaint was filed electronically with the Clerk of the Court using the CM/ECF system.

I further certify that service of the Summons and Complaint will be made upon Defendant in accordance with Rule 4 of the Federal Rules of Civil Procedure.

**Alternative:**

I hereby certify that on this 22nd day of September 2026, a true and correct copy of the foregoing Complaint was filed electronically with the Clerk of the Court using the CM/ECF system.

I further certify that a courtesy copy was transmitted via electronic mail to counsel known to represent Defendant, and that formal service of process will be completed in accordance with Rule 4 of the Federal Rules of Civil Procedure.

Dated: September 22, 2026

s/ *Ronald W. Chapman II*
RONALD W. CHAPMAN II, ESQ., LL.M.